# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# ORLANDO DIVISION

**SUPERIOR CONSULTING SERVICES, INC.,**

        **Plaintiff,**

**v.**                                        Case No: 6:16-cv-2001-Orl-31GJK

**SHAKLEE CORPORATION,**

        **Defendant.**

## ORDER

This matter comes before the Court on the Motion to Dismiss Counterclaim (Doc. 72) filed by the counter-defendant, Superior Consulting Services, Inc. ("Superior"), and the Response in Opposition (Doc. 75) filed by the counter-plaintiff, Shaklee Corporation ("Shaklee").

### I. Background

Shaklee presents two separate sets of facts to support its allegations. Counts I and III are related to Superior's alleged use of Shaklee trademarks and representations Superior makes when marketing its services. Count II involves representations that Superior has allegedly made in the registration of its own trademark.

#### A. Shaklee's Trademarks

According to the facts alleged in the counterclaim (Doc. 68), which are taken as true for the purposes of this order, Superior operates a blood-testing company through its principal, Eleanor Cullen. Cullen is a registered nurse who has researched the early detection of serious health problems and turned that research into services offered by Superior. (*Id.* ¶ 5.) A customer interested in Superior's services orders a blood test packet through Superior's website and then

gets blood drawn at a laboratory under contract with Superior. (*Id.* ¶ 6.) Once a client's blood is drawn, Superior analyzes the blood and provides a set of diagnoses and recommendations for various supplements—some of which are Shaklee's—to treat the client's disease or pre-disease conditions. (*Id.*)

In 2005, Shaklee became aware that Superior was marketing its blood-testing services directly to Shaklee distributors. (*Id.* ¶ 11.) Due to a concern that Superior's marketing could implicate Shaklee in the unlicensed practice of medicine, Shaklee requested further information from Superior. (*Id.* ¶ 12.) Superior provided some of the requested information and Shaklee warned Superior against prescribing or recommending any Shaklee products to treat disease. Despite these admonitions Superior continued. As a result, customers have contacted Shaklee regarding confusing and misleading information provided by Superior related to the effectiveness or appropriateness of Shaklee products. (*Id.* ¶ 16.)

In addition to the prescription of Shaklee products to treat disease, Superior has used Shaklee trademarks within its marketing materials.[1] These materials were sent directly to Shaklee distributors in an attempt to connect Superior to Shaklee, make sales, and use Shaklee distributors and customers as a client base for Superior's blood-testing services. (*Id.* ¶¶ 29–31.)

On these facts, Shaklee alleges that Superior's use of its trademarks in marketing materials constitutes trademark dilution. Further, Superior's prescription of Shaklee nutritional supplements to treat serious diseases is an unfair or deceptive act under the Florida Deceptive and Unfair Trade Practices Act, Florida Statutes §§ 501.201–501.23.

---

[1] Specifically, two marks were allegedly used by Superior. The first was registered on May 6, 1975, with registration number 1010096, and the second was registered on June 27, 1978, with registration number 73089848. (Doc. 68 ¶¶ 17–21.) The first mark relates to food supplements, whereas the second relates to merchandising of those supplements. (*Id.*) These marks can be found at Docs. 20-3 and 20-5.

### B. Superior's Trademark Registration

On February 26, 2002, Superior was assigned a trademark for the word Healthprint. Soon after, on July 22, 2002, Superior amended the mark and filed a registration with the United States Patent and Trademark Office ("USPTO") affirming that Superior used the mark in connection with nutritional supplements for general health maintenance.[2] Superior included a sample nutritional supplement of "Organic Zinc" bearing the Healthprint mark. (Doc. 68 at 26–27.) Superior made similar representations on November 4, 2008, and October 25, 2012. (*Id.*)

Despite these representations, Superior has advertised that it does not sell nutritional supplements because doing so would be a conflict of interest. (*Id.* at 27.) According to Superior's website and a book written by Cullen, Superior has not sold nutritional supplements since 2002. (*Id.*) Shaklee claims that these facts support a declaratory judgment that Superior has committed fraud on the USPTO and abandoned its Healthprint trademark under the Lantham Act, 15 U.S.C. §§ 1051–1141.

## II. Motion to Dismiss Standard

A Federal Rule of Civil Procedure 12(b)(6) motion to dismiss for failure to state a claim tests the sufficiency of the complaint—it does not reach the merits of the case. *Milburn v. United States*, 734 F.2d 762, 765 (11th Cir. 1984). In ruling on a motion to dismiss, the Court accepts factual allegations as true and construes the complaint in the light most favorable to the plaintiff. *SEC v. ESM Group, Inc.*, 835 F.2d 270, 272 (11th Cir. 1988). The Court limits its consideration to the pleadings and any exhibits attached thereto. Fed. R. Civ. P. 10(c); *see also GSW, Inc. v. Long Cty., Ga.*, 999 F.2d 1508, 1510 (11th Cir. 1993).

---

[2] The serial number for Healthprint is 76047034. (Doc. 68 at 26.)

Federal Rule of Civil Procedure 8(a)(2) mandates that pleadings contain "a short and plain statement of the claim showing that the pleader is entitled to relief," so as to give the defendant fair notice of what the claim is and the grounds upon which it rests. *Conley v. Gibson*, 35 U.S. 41, 47 (1957), *overruled on other grounds*, *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544 (2007). The plaintiff must allege facts that raise a right to relief above the speculative level and indicate the presence of the required elements. *Twombly*, 550 U.S. at 555; *Watts v. Fla. Int'l Univ.*, 495 F.3d 1289, 1302 (11th Cir. 2007). Conclusory allegations, unwarranted factual deductions, or legal conclusions masquerading as facts will not prevent dismissal. *Davila v. Delta Air Lines, Inc.*, 326 F.3d 1183, 1185 (11th Cir. 2003).

In *Ashcroft v. Iqbal*, the Supreme Court explained that a complaint need not contain detailed factual allegations, "but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation. A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555, 557) (internal citations omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the plaintiff is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

## III. Trademark Dilution

In Count I of its counterclaim, Shaklee seeks to enjoin Superior's use of Shaklee trademarks, claiming that said use constitutes trademark dilution under 15 U.S.C. § 1125. Injunctive relief for trademark dilution is available under 15 U.S.C. § 1125(c)(1), which states:

> Subject to the principles of equity, the owner of a famous mark that is distinctive, inherently or through acquired distinctiveness, shall be entitled to an injunction against another person who, at any time after the owner's mark has become famous, commences use of a mark or

> trade name in commerce that is likely to cause dilution by blurring or dilution by tarnishment of the famous mark, regardless of the presence or absence of actual or likely confusion, of competition, or of actual economic injury.

*Id.* Therefore, "to prove a dilution claim, a plaintiff must provide sufficient evidence that '(1) the mark is famous; (2) the alleged infringer adopted the mark after the mark became famous; (3) the infringer diluted the mark; and (4) the defendant's use is commercial and in commerce.'" *PortionPac Chem. Corp. v. Sanitech Sys.*, 217 F. Supp. 2d 1238, 1250–51 (M.D. Fla. 2001) (quoting *Syndicate Sales, Inc. v. Hampshire Paper Corp.*, 192 F.3d 644, 649 (7th Cir. 1999)). Superior argues that Shaklee has failed to sufficiently allege that its marks are famous and that Superior adopted its marks after they became famous.

A mark is considered famous "if it is widely recognized by the general consuming public of the United States as a designation of source of the goods or services of the mark's owner." 15 U.S.C. § 1125(c)(2)(A). To determine whether a mark is recognized by the public, courts consider factors such as (1) the duration, extent, and geographic reach of advertising and publicity of the mark; (2) the amount, volume, and geographic extent of sales of goods or services offered under the mark; (3) the extent of actual recognition of the mark; and (4) whether the mark was registered under the Act of March 3, 1881, or the Act of February 20, 1905, or on the principal register. *Id.* To be famous, "a mark must have a degree of distinctiveness and strength beyond that needed to serve as a trademark . . . [it] must be truly prominent and renowned." *Carnival Corp. v. SeaEscape Casino Cruises, Inc.*, 74 F. Supp. 2d 1261, 1270 (S.D. Fla. 1999) (quotation omitted).

Here, Shaklee alleges that its marks have been used for more than thirty years within the nutritional supplement market "to identify, market, and sell millions of products worldwide" and that its marks are famous worldwide. (*Id.* ¶¶ 26, 27.) Taken as true, Shaklee has alleged facts that give rise to an inference that its marks are famous in terms of the factors listed above—at least

within the nutritional supplement market. *PortionPac Chem. Corp.*, 210 F. Supp. 2d at 1310 (denying a motion to dismiss when a plaintiff alleged facts showing its trademark was famous throughout the school sanitation market).

Next, Superior argues that Shaklee has not alleged the date that Superior began using its marks, making it impossible to determine if the marks were famous when Superior began using them. For support, Superior relies on *Brain Pharma, LLC v. Scalini*, 858 F. Supp. 2d 1349 (S.D. Fla. 2012), where the court found that the plaintiff's complaint was deficient, in part, because the plaintiff alleged neither the date that the defendant began using the plaintiff's mark nor that the defendant used the mark after it had achieved its fame. But Shaklee's allegations go beyond those in *Brain Pharma, LLC*. While Shaklee never provides the specific date that Superior began using the marks, Shaklee has alleged that Superior began using Shaklee's marks after they became famous. (Doc. 68 ¶ 28.) To succeed in its claim, Shaklee will have to prove when its mark achieved fame and that Superior began using it after that date. *PortionPac Chem. Corp.*, 217 F. Supp. 2d at 1251. But at this stage in the case, Shaklee's allegations are sufficient.

Finally, Superior contends that Shaklee has not established a claim for trademark dilution because it only alleges that Superior has used marks identical to Shaklee's, not separate and distinct marks. But a separate or distinct mark is not required to establish a dilution claim. Indeed, a defendant's use of a plaintiff's mark can be sufficient circumstantial evidence to establish the third element of a dilution claim—that the defendant diluted the mark. *Bentley Motors Ltd. Corp. v. McEntegart*, 976 F. Supp. 2d 1297, 1314 (M.D. Fla. 2013) (finding that defendants' use of marks identical to plaintiff's famous and protected marks supported summary judgment in the plaintiff's favor). Therefore, Superior's motion will be denied as it relates to Shaklee's trademark dilution claim.

**IV.     Trademark Abandonment or Fraud on the USPTO**

In Count II, Shaklee seeks a declaratory judgment that Superior has abandoned its Healthprint mark or, in the alternative, that Superior obtained the mark through fraud.

**A.     Trademark Abandonment**

Under the Lantham Act, 15 U.S.C. §§ 1051–1141, a trademark is deemed abandoned "[w]hen its use has been discontinued with intent not to resume such use." *Id.* § 1127. To prove abandonment of a trademark a defendant must establish two elements: "[1] that the plaintiff has ceased using the mark in dispute and [2] that he has done so with an intent not to resume its use." *Cumulus Media, Inc. v. Clear Channel Commc'ns, Inc.*, 304 F.3d 1167, 1174 (11th Cir. 2002). For the purposes of the Lantham Act, "use" is defined as "the bona fide use of such mark made in the ordinary course of trade, and not made merely to reserve a right in a mark." 15 U.S.C. § 1127. "Thus, neither promotional use of the mark on goods in a different course of trade nor mere token use constitute 'use' under the Lantham Act." *Emergency One, Inc. v. Am. FireEagle, Ltd.*, 228 F.3d 531, 536 (4th Cir. 2000) (citing *Imperial Tobacco, Ltd. v. Phillip Morris, Inc.*, 899 F.2d 1575, 1592–83 (Fed. Cir. 1990)). Further, an intent not to resume use of a trademark "may be inferred from the circumstances." 15 U.S.C. § 1127.

Superior argues that Shaklee has failed to state a claim of abandonment because it has not alleged "how long Superior has . . . abandoned its marks" and whether "Superior has an intent not to use its marks." (Doc. 72 at 11–12.) But Shaklee's counterclaim shows otherwise. Shaklee alleges that Superior requested registration of the Healthprint trademark on July 22, 2002, in connection with "nutritional supplements for general health maintenance." (Doc. 68 at 27.) As part of its registration, Superior included a picture of a bottle of "Organic Zinc" bearing the Healthprint trademark. (*Id.*) Shaklee also alleges that, as early as 2002, Superior's marketing materials and

Cullen's book both state that Superior "sells no supplements because doing so would be a conflict of interest" (*Id.*) and that, instead, Superior offers a blood-testing service designed to help its clients detect disease and "prevent or solve problems ranging from cancer to heart disease to digestive disorders." (*Id.* ¶¶ 7–8.)

In other words Shaklee alleges that, given Superior's own marketing materials, Superior has not "used" the Healthprint mark as contemplated by the Lantham Act. Rather, it has used the mark in a "different course of trade" than that in which it is registered. This change in the nature of the goods and services offered under the mark—a change from the sale of nutritional supplements to blood testing—supports a claim of abandonment. *See* 3 McCarthy on Trademarks and Unfair Competition § 17:24 (4th ed.) ("a sudden and substantial change in the nature or quality of the goods sold under a mark may so change the nature of the thing symbolized that the mark becomes fraudulent and/or that the original rights are abandoned"). Superior's marketing materials also lead to an inference that it does not intend to use the mark in its registered course of trade. 15 U.S.C. §1127. Therefore, Shaklee has sufficiently plead abandonment under the Lantham Act.

### B. Fraud on the USPTO

"Fraud in obtaining a trademark occurs 'when an applicant knowingly makes false, material representations of fact in connection with an application' or in a verified declaration." *Spiral Direct, Inc.*, 151 F. Supp. 3d at 1277 (quoting *Traffic Control, Inc. v. Shadow Network Inc.*, 104 F.3d 336, 340 (Fed. Cir. 1997)). Under Federal Rule of Civil Procedure 9(b), a complaint alleging fraud must set forth "(1) precisely what statements were made, (2) the time and place of each statement and the person responsible for the same, (3) the content of such statements and how they misled the plaintiff, and (4) what the defendants gained through the fraud." *Id.* (citing

*Ziemba v. Cascade Int'l, Inc.*, 256 F.3d 1194, 1202 (11th Cir. 2001)). Superior argues that Shaklee has failed to meet Rule 9(b)'s requirements.

Shaklee's fraud allegations rest on representations Superior made to the USPTO from 2002 to 2012. Namely, Superior allegedly filed declarations on July 22, 2002; November 4, 2008; and October 25, 2012, affirming that it used the Healthprint trademark in connection with "nutritional supplements for general health maintenance." Each declaration was accompanied by a sample nutritional supplement bearing the Healthprint mark. (Doc. 68 at 27–28.) Yet, from 2002 on, Superior's marketing materials as well as a book written by Cullen have unequivocally stated that Superior "sells no supplements because doing so would be a conflict of interest." (*Id.*) Thus, Shaklee claims that Superior gained its Healthprint trademark protections by knowingly misrepresenting the nature of the services offered under the Healthprint mark on three separate occasions. Accordingly, Shaklee has sufficiently plead fraud on the USPTO. *Spiral Direct, Inc.*, 151 F. Supp. 3d at 1277.

In addition to its Rule 9(b) challenge, Superior argues that Shaklee's allegations are "repugnant to the evidence in the record" and references evidence outside of Shaklee's counterclaim. (Doc. 72 at 14.) It is Superior's position that the Court should review these documents because Superior "makes a factual attack" on Shaklee's fraud allegations. (*Id.* at 13 n.4.) However, factual attacks are used to challenge jurisdiction, not the merits of a claim. *Morrison v. Amway Corp.*, 523 F.3d 920, 925 (11th Cir. 2003). And Superior only uses the extra-counterclaim evidence to attack the merits of Shaklee's claim. Therefore, the Court declines Superior's invitation to review documents outside the counterclaim and, instead, has limited its review to the counterclaim and the documents that it references. *St. George v. Pinellas Cty.*, 285

F.3d 1334, 1337 (11th Cir. 2002). Consistent with the above analysis, Shaklee's fraud claim survives the motion.

## V. The Florida Deceptive and Unfair Trade Practices Act

Superior challenges Shaklee's claim under the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), Florida Statutes §§ 501.201–501.23, with two arguments: (1) that Shaklee lacks Article III standing to bring its claim, and (2) that Shaklee has failed to state a claim for declaratory judgment under FDUTPA.

FDUTPA broadly prohibits any unfair or deceptive acts or practices committed in the conduct of any trade or commerce. Fla. Stat. § 501.204(1). FDUTPA's purpose is "[t]o protect the consuming public and legitimate business enterprises from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce." *Id.* § 501.202(2). FDUTPA achieves its goal by creating an action for damages and an action for declaratory or injunctive relief. *Id.* § 501.211. Shaklee only brings an action for declaratory or injunctive relief and has not alleged any actual damages.

Florida Statutes § 501.211(1), which establishes the cause of action for declaratory or injunctive relief under FDUTPA, provides in pertinent part:

> Without regard to any other remedy or relief to which a person is entitled, *anyone aggrieved* by a violation of this part may bring an action to obtain a declaratory judgment that an act or practice violates this part and to enjoin a person who has violated, is violating, or is otherwise likely to violate this part.

*Id.* (emphasis supplied). Thus, under FDUTPA "anyone aggrieved" can pursue injunctive relief even where the aggrieved would not directly benefit. *Dapeer v Neutrogena Corp.*, 95 F. Supp. 3d 1366, 1373 (S.D. Fla. 2015) (citing *Davis v. Powertel, Inc.*, 776 So. 2d 971, 974 (Fla. 1st DCA 2000)); *see Smith v. Wm. Wrigley Jr. Co.*, 663 F. Supp. 2d 1336, 1339 (recognizing that FDUTPA makes declaratory and injunctive relief available to a broader class of plaintiffs than those that

could recover damages). But, as Superior properly points out, such expansive relief cannot undermine Article III standing requirements. *Dapeer*, 95 F. Supp 3d at 1373.

"To have standing, a plaintiff must show (1) he has suffered an injury in fact that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to conduct of the defendant; and (3) it is likely, not just merely speculative, that the injury will be redressed by a favorable decision." *Kelly v. Harris*, 331 F.3d 817, 819–20 (11th Cir. 2003). Superior argues that Shaklee has not alleged any injury in fact and has only accused Cullen of practicing medicine without a license with no supporting facts.

In its counterclaim, Shaklee alleges that Superior has violated FDUTPA by "advertis[ing] its blood testing and diagnosis services with the promise of identifying, diagnosing, and treating a wide range of diseases and disorders, including but not limited to asthma, diabetes, cancer, and heart disease." (Doc. 68 ¶ 52.) Shaklee further alleges that Superior markets its blood-testing and diagnosis services to Shaklee distributors and customers, often "prescribing" Shaklee products as treatment for diseases, ultimately causing confusion as to the efficacy and appropriate usage of Shaklee's products. (*Id.* ¶¶ 11–16, 53–55.) Finally, Shaklee alleges that it has been uniquely aggrieved by Superior's deceptive and misleading conduct—that is, Superior's recommendation of Shaklee supplements to Shaklee's distributors and customers to treat diseases. (*Id.* ¶ 56.)

Said another way, Superior's continued and allegedly deceptive practice of recommending Shaklee's nutritional supplements as treatment for serious diseases—such as cancer and diabetes—is causing Shaklee harm because those supplements are, unsurprisingly, ineffective or inappropriate for such uses. It can plausibly be inferred from such allegations that Shaklee's reputation is therefore harmed. *Spiral Direct, Inc. v. Basic Sports Apparel, Inc.*, 151 F. Supp. 3d 1268, 1274 (M.D. Fla. 2015) ("At the motion to dismiss stage, a court must evaluate all plausible

inferences derived from the facts of the complaint in favor of the plaintiff.") (citation omitted). Thus, Shaklee has sufficiently alleged an injury in fact that satisfies Article III's standing requirements. *Koziara v. City of Casselberry*, 392 F.3d 1302, 1305 (11th Cir. 2004) (for the purposes of standing "[a] plaintiff must point to some type of cognizable harm, whether such harm is physical, economic, reputational, contractual, or even aesthetic").

Besides its standing argument, Superior contends that Shaklee has failed to allege sufficient facts to state a claim under FDUTPA. To state a claim seeking declaratory or injunctive relief under FDUTPA a plaintiff must allege that "the defendant engaged in a deceptive act or practice in trade or commerce, § 501.204(1), and that the plaintiff [is] a person 'aggrieved' by the deceptive act or practice." *Klinger v. Weekly World News, Inc.*, 747 F. Supp. 1477, 1480 (S. D. Fla. 1990). Superior does not challenge the allegation that its "prescription" of Shaklee supplements to treat disease is an unfair or deceptive practice, rather, it only disputes whether Shaklee has adequately alleged it is "aggrieved."

In *Ahearn*, Florida's First District Court of Appeal recognized that FDUTPA provides no specific definition for the term "aggrieved." *Ahearn v. Mayo Clinic*, 180 So. 3d 165, 172–73 (Fla. 1st DCA 2015). But the court found that a plaintiff is sufficiently aggrieved if he has alleged an injury that is more than merely speculative. *Id.* at 173. Indeed, some specific past, present, or future grievance must be shown. *Id.* Ultimately, the court used another statutory definition of "aggrieved" for guidance, which states that the grievance alleged "may be shared in common with other members of the community at large but must exceed in degree the general interest in community good shared by all persons." *Id.* (quoting Fla. Stat. § 163.3215(2)). Put plainly, a plaintiff is "aggrieved" under FDUTPA when the deceptive conduct alleged has caused a non-

speculative injury that has affected the plaintiff beyond a general interest in curbing deceptive or unfair conduct. *Id.*

Here, Shaklee has sufficiently alleged facts showing that it is aggrieved under FDUTPA. Shaklee has alleged that its customers and distributors have become confused about the "efficacy" and "appropriate usage" of its supplements because of Superior's allegedly deceptive representations. (Doc. 68 ¶ 16.) In other words, customers and distributors have lost faith in Shaklee's products or have become confused about the proper use of these products. As a result, Shaklee claims that it has been "uniquely aggrieved;" a conclusion supported by Shaklee's status as the manufacturer of these products. (Doc. 68 ¶ 56.) Taking these allegations as true and drawing all inferences in a light most favorable to Shaklee, Shaklee's FDUTPA claim survives the motion.

**VI. Conclusion**

It is, therefore,

**ORDERED** that Superior's Motion to Dismiss Counterclaim (Doc. 72) is **DENIED**.

**DONE** and **ORDERED** in Chambers, Orlando, Florida on June 30, 2017.

_____
GREGORY A. PRESNELL
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Party