# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**SUPERIOR CONSULTING SERVICES, INC.,**

      **Plaintiff,**

**v.**                                  Case No: 6:16-cv-2001-Orl-31GJK

**SHAKLEE CORPORATION and SHAKLEE U.S., LLC,**

      **Defendants.**

## ORDER

This Matter comes before the Court on Shaklee's Motion for Summary Judgment (Doc. 178); Superior's Motion for Summary Judgment (Doc. 187); Shaklee's Response in Opposition (Doc. 248); Superior's Memorandum in Opposition (Doc. 249); Shaklee's Reply (Doc. 258); and Superior's Reply (Doc. 259).

**I.    Factual and Procedural Background**

Superior owns two Florida fictitious business entities called "Your Future Health" and "YFH" (collectively "Superior"). Doc. 20 ¶ 5. Eleanor Cullen owns and operates Superior. Superior's "primary objective is the early detection of disease, through performing certain laboratory tests, including blood tests, for consumers." *Id.* ¶ 7. Superior accomplishes its objective by creating a profile "customized to a client's unique biochemistry," called a "Healthprint." *Id.* ¶ 11. Superior has registered the mark "Healthprint" twice with the United States Patent and Trademark Office ("USPTO"). Registration number 2646571 was obtained on November 5, 2002, and registration number 2928465 was obtained on March 1, 2005. Doc. 20 ¶¶ 14, 16. The USPTO did not require

proof of a secondary meaning for either mark. *Id.* ¶ 18. On November 8, 2008, and February 5, 2011, Superior filed declarations of incontestability for the marks.

On June 8, 2016, Shaklee, a corporation that manufactures and distributes nutrition supplements, beauty products, and household-cleaning products, filed a trademark application with the USPTO claiming a similar "Healthprint" mark. Shaklee's Healthprint refers to a free, online survey that consists of twenty-two questions about a client's personal characteristics, habits, and goals. Doc. 43–8 ¶ 13. Once the client answers all of the questions, he or she is presented with "a customized set of Shaklee products that fits [his or her] health goals, needs and budget." Doc. 43–7, Ex. 1 at 1.

On December 14, 2017, Superior filed its Second Amended Complaint. Doc. 159. Count I of the Second Amended Complaint alleges Direct Federal Trademark Infringement; Count II alleges Vicarious Federal Trademark Infringement; Count III alleges violation of the Florida Deceptive and Unfair Trade Practices Act, or, in the alternative, common law unfair competition; Count IV alleges common law trademark infringement; Count V alleges statutory trademark dilution in violation of 15 U.S.C. § 1125 and Florida Statute § 495.001, *et seq.*; Count VI alleges Federal Trademark Unfair Competition under 15 U.S.C. § 1125(a); and Count VII alleges common law tortious interference with advantageous business relationships. On January 2, 2018, Shaklee filed its Answer, Affirmative Defenses, and Counterclaim. Doc. 166. Count I of the Counterclaim alleges Statutory Trademark Dilution; Count II seeks declaratory relief for invalidity of the Healthprint mark for nutritional supplements; and Count III seeks declaratory relief under the Florida Deceptive and Unfair Trade Practices Act.

## II. Legal Standards

A party is entitled to summary judgment when the party can show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. Which facts are material depends on the substantive law applicable to the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The moving party bears the burden of showing that no genuine issue of material fact exists. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991). A court "must draw all reasonable inferences in favor of the non-moving party, and it may not make credibility determinations or weigh the evidence." *Hinson v. Clinch County, Ga. Bd. Of Educ.*, 231 F.3d 821, 826-27 (11th Cir. 2000) (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150-51 (2000)).

When a party moving for summary judgment points out an absence of evidence on a dispositive issue for which the nonmoving party bears the burden of proof at trial, the nonmoving party must "go beyond the pleadings and by [his] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324-25 (1986) (internal quotations and citation omitted). Thereafter, summary judgment is mandated against the nonmoving party who fails to make a showing sufficient to establish a genuine issue of fact for trial. *Id.* at 322, 324-25. The party opposing a motion for summary judgment must rely on more than conclusory statements or allegations unsupported by facts. *Evers v. Gen. Motors Corp.*, 770 F.2d 984, 986 (11th Cir. 1985) ("conclusory allegations without specific supporting facts have no probative value"). The Court must consider all inferences drawn from the underlying facts in the light most favorable to the party opposing the motion, and resolve all reasonable doubts against the moving party. *Anderson*, 477 U.S. at 255.

### III. Analysis

Shaklee moves for summary judgment on all counts of the Second Amended Complaint. Superior moves for summary judgment on Counts I, III, IV, and VI of the Second Amended Complaint; the third, fourth, fifth, sixth, seventh, eighth, and ninth (mislabeled as fifteenth) affirmative defenses to the Second Amended Complaint; and Counts II and III of the Counterclaim.[1]

### A. Trademark Infringement, FDUPTA, and Unfair Competition: Counts I, II, III, IV, and VI of the Second Amended Complaint

Title 15 U.S.C. § 1114(a), provides that any person who uses a "copy, or colorable imitation of a registered trademark" that is "likely to cause confusion" will be liable in a civil action by the registrant. Section 1125(a) provides that anyone who uses a "word, term, name, symbol . . . or any combination thereof" that is "likely to cause confusion . . . as to the affiliation" of one person with another, or "as to the origin, sponsorship, or approval of his or her . . . commercial activities" with those of another person shall be held liable in a civil action for damages caused by the unauthorized use. The touchstone for trademark cases is the likelihood of consumer confusion. *Frehling Enters., Inc. v. Int'l Select Grp., Inc.*, 192 F.3d 1330, 1337 (11th Cir. 1999). Counts I and II both raise federal trademark infringement claims. The analysis of the common law trademark infringement claim (Count IV) and the FDUPTA claim (Count III) is the same as that of the federal trademark infringement claims. *See Gift of Learning Found., Inc. v. TGC, Inc.*, 329 F.3d 792, 802 (11th Cir. 2003); *Rain Bird Corp. v. Taylor*, 665 F. Supp. 2d 1258, 1267 (N.D. Fla. 2009). Additionally, Courts address "claim[s] for unfair competition [Count VI] under the same analysis as used for the trademark infringement claim[s]." *Homes & Land Affiliates, LLC v. Homes & Loans Magazine,*

---

[1] Because the Court finds that disputed issues of material fact remain with respect to all Counts, the Court declines to address the Affirmative Defenses at this time.

- 4 -

*LLC*, 598 F. Supp. 2d 1248, 1257 n.7 (M.D. Fla. 2009); *see also Maurer Rides USA, Inc. v. Beijing Shibaolia Amusement Equip. Co ., Ltd.*, No. 6:10-cv-1718-ORL-37, 2012 WL 2469981, at *4 (M.D. Fla. May 30, 2012), *report and recommendation adopted in part sub nom. Maurer Rides USA, Inc. v. Beijing Shibaolia Amusement Equip. Co.*, No. 6:10-cv-1718-ORL-37, 2012 WL 2463834 (M.D. Fla. June 27, 2012).

The Eleventh Circuit uses a seven-factor test to analyze trademark infringement claims. The factors include: (1) the type of the mark, (2) the similarity of the marks, (3) the similarity of the products the marks represent, (4) the similarity of the parties' retail outlets and customer base, (5) the similarity of advertising media, (6) the defendant's intent, and (7) actual confusion. *Id.* at 1335. The type of mark and the evidence of actual confusion are the most important factors. *Frehling Enters., Inc.*, 192 F.3d at 1330.

Shaklee groups together Counts I, II, III, IV, and VI for purposes of its Motion for Summary Judgment. *See* Doc. 178 at 13. Shaklee argues that it should be awarded summary judgment on these counts, contending that "no reasonable jury could find a likelihood of confusion on these facts, because: (i) the services the marks represent are demonstrably different; (ii) there is no evidence of Shaklee's intent to trade on Superior's Healthprint mark or otherwise harm Superior; and (iii) there is absolutely no evidence of actual consumer confusion." *Id.* at 14. Shaklee assumes, for purposes of its Motion, that some of the seven factors, including "strength of the mark and similarity of the mark," favor Superior. *Id.* In effect, Shaklee contends that no reasonable jury could find in favor of Superior because three out of seven factors favor Superior. Because the Court finds that genuine issues of fact remain as to all three of those factors, Shaklee is not entitled to summary judgment on the trademark infringement or unfair competition claims. Additionally, under these circumstances,

the disputed posture of those three factors precludes a finding of summary judgment in favor of Superior as well.

### 1. Similarity of the Services

"This factor requires a determination as to whether the products are the kind that the public attributes to a single source, not whether or not the purchasing public can readily distinguish between the products of the respective parties." *Frehling Enterprises, Inc. v. Int'l Select Grp., Inc.*, 192 F.3d 1330, 1338 (11th Cir. 1999). Here, the services the marks represent are not identical. However, they are similar in some ways. Some record evidence indicates that Superior's Healthprint requires a blood test, but other evidence indicates that it does not. *See, e.g.*, Doc. 224 at 45-46. Further, both products involve, at least in some way, the recommendation or suggestion of certain supplements. Superior offers its Healthprint for a fee, but does not attempt to sell supplements. Shaklee offers its Healthprint for free, but apparently does so to promote the supplements it sells. Even though Superior did not sell the supplements, the suggestion of supplements for purchase appears to have been an integral part of Superior's Healthprint. The services are related in that they both purport to use questionnaires to better the health and/or lifestyles of their customers at least in part through the usage of nutritional supplements. Shaklee mentions its sales of beauty supplies and cleaning products in support of its argument that the two services would not be related in the minds of consumers, but Shaklee's Healthprint survey had nothing to do with cleaning products or beauty supplies. Rather, Shaklee's Healthprint survey is limited to suggesting nutritional supplements in response to consumer survey responses.

Still, despite the similarities between the two services, there are obvious differences. Superior's Healthprint, even assuming it did not require a blood test, involved conversations with Mrs. Cullen, typically over the phone, and appeared to take a considerable amount of time. Shaklee's

Healthprint was a quick, standardized, online survey that seemed to involve no personal interaction. One cost a substantial amount of money, and the other was free. A reasonable jury could find that the services the marks represent are similar, and that their similarity contributes to a likelihood of confusion. However, in light of all the record evidence, whether this factor favors Superior is reasonably debatable.

### 2. Intent

A showing of intent can "justify the inference that there is confusing similarity." *Frehling Enterprises, Inc.*, 192 F.3d at 1340. Nevertheless, a showing of intent is not required to succeed on a claim for trademark infringement. *Sovereign Military Hospitaller Order of Saint John of Jerusalem of Rhodes & of Malta v. Fla. Priory of the Knights Hospitallers of the Sovereign Order of Saint John of Jerusalem, Knights of Malta, The Ecumenical Order*, 809 F.3d 1171, 1188 (11th Cir. 2015). To weigh this factor, courts must determine whether the defendant "had a conscious intent to capitalize on the plaintiff's business reputation, was intentionally blind, or otherwise manifested improper intent" when it adopted its mark. *Custom Mfg. & Eng'g, Inc. v. Midway Servs., Inc.*, 508 F.3d 641, 648 (11th Cir. 2007) (internal quotations and alteration omitted). Superior has produced evidence that Shaklee knew about Superior's mark prior to launching Shaklee's own Healthprint. Superior also argues that Jennifer Steeves-Kiss, a former employee of both Shaklee and Proctor & Gamble, waited eleven years after a Proctor & Gamble meeting where Superior's Healthprint was allegedly discussed to suggest the name Healthprint to Shaklee for its survey. See Doc. 187 at 12; Doc. 215 at 189-191; Doc. 178 at 6. At the preliminary injunction stage, the Court expressed doubts as to Superior's ability to prove intent. *Cf. Superior Consulting Servs., Inc. v. Shaklee Corp.*, No. 616-cv-2001-ORL31GJK, 2017 WL 680076, at \*6 (M.D. Fla. Feb. 21, 2017), *aff'd*, 710 F. App'x 850 (11th Cir. 2017). However, at the summary judgment stage, the Court is not

permitted to weigh the evidence, and must draw all reasonable inferences in favor of the non-movant on each party's Motion. Superior's evidence does not establish intent, but it does create a disputed issue of fact in that regard.

### 3. Actual Confusion

Shaklee argues that Superior has not provided any evidence of confusion in someone actually buying Superior's test or someone filling out Shaklee's Healthprint survey. However, "[p]roof of actual confusion is not necessary to prove likelihood of confusion." *Homes & Land Affiliates, LLC v. Homes & Loans Magazine, LLC*, 598 F. Supp. 2d 1248, 1264 (M.D. Fla. 2009). There are several ways to show actual confusion, including "'inquiries regarding possible affiliations between the parties.'" *Id.* (quoting *Popular Bank of Fla. v. Banco Popular de Puerto Rico*, 9 F.Supp.2d 1347, 1360 (S.D. Fla. 1998)).

One of Superior's clients, Frank Murphy, declared under penalty of perjury that he was "confused . . . as to whether the Shaklee Healthprint has replaced or will be replacing [Superior's] Healthprint altogether." Doc. 38 ¶ 7. Such confusion could have an impact on potential purchasing decisions. However, in the same declaration, Murphy also indicated that he knew that the Healthprints were different, as they suggested different supplement plans. *Id.* ¶ 8. In Murphy's deposition, he did not claim that he was actually confused, but he did indicate that he associated Superior's Healthprint with answering health-related, personal questions, not blood tests. Doc. 216 at 43, 68-71. This deposition testimony, along with his declaration, supports an inference that he could have been actually confused about the two Healthprints. Murphy's declaration and deposition alone cannot be said to conclusively show actual confusion for purposes of Superior's Motion, but, drawing all reasonable inferences in favor of Superior, a reasonable jury could find that actual

confusion existed. Conversely, drawing all reasonable inferences in favor of Shaklee with respect to Superior's Motion, actual confusion remains a disputed issue of material fact.

### B. Trademark Dilution: Count V of the Second Amended Complaint

Injunctive relief for trademark dilution is available under 15 U.S.C. § 1125(c)(1), which states:

> Subject to the principles of equity, the owner of a famous mark that is distinctive, inherently or through acquired distinctiveness, shall be entitled to an injunction against another person who, at any time after the owner's mark has become famous, commences use of a mark or trade name in commerce that is likely to cause dilution by blurring or dilution by tarnishment of the famous mark, regardless of the presence or absence of actual or likely confusion, of competition, or of actual economic injury.

*Id.* Therefore, "to prove a dilution claim, a plaintiff must provide sufficient evidence that '(1) the mark is famous; (2) the alleged infringer adopted the mark after the mark became famous; (3) the infringer diluted the mark; and (4) the defendant's use is commercial and in commerce.' " *PortionPac Chem. Corp. v. Sanitech Sys.*, 217 F. Supp. 2d 1238, 1250–51 (M.D. Fla. 2002) (quoting *Syndicate Sales, Inc. v. Hampshire Paper Corp.*, 192 F.3d 644, 649 (7th Cir. 1999)).

A mark is considered famous "if it is widely recognized by the general consuming public of the United States as a designation of source of the goods or services of the mark's owner." 15 U.S.C. § 1125(c)(2)(A). To determine whether a mark is recognized by the public, courts consider factors such as (1) the duration, extent, and geographic reach of advertising and publicity of the mark; (2) the amount, volume, and geographic extent of sales of goods or services offered under the mark; (3) the extent of actual recognition of the mark; and (4) whether the mark was registered under the Act of March 3, 1881, or the Act of February 20, 1905, or on the principal register. *Id.* To be famous, "a mark must have a degree of distinctiveness and strength beyond that needed to serve as a trademark

. . . [it] must be truly prominent and renowned." *Carnival Corp. v. SeaEscape Casino Cruises, Inc.*, 74 F. Supp. 2d 1261, 1270 (S.D. Fla. 1999) (internal quotation marks omitted).

The standard for establishing a trademark dilution claim under Florida Statute § 496.151 "is essentially the same as that of a dilution claim under the Lanham Act." *Holding Co. of the Villages, Inc. v. Little John's Movers & Storage, Inc.*, No. 5:17-cv-187-OC-34PRL, 2017 WL 6319549, at *3 (M.D. Fla. Dec. 11, 2017) (internal quotation marks and citations omitted). However, under Florida law, the plaintiff need only show "that the mark is famous in Florida. *Id.* at *4.

Fame is the only element of trademark dilution that Shaklee argues is unsatisfied. Doc. 178 at 26. Superior argues that the Healthprint mark is famous for several reasons that are supported by citations to record evidence: (1) it has been used in interstate and intrastate commerce since 1979; (2) Mrs. Cullen has discussed Healthprint on a radio show to listeners in thirteen states since the year 2000; (3) Mrs. Cullen discussed Healthprint in her book, which entered circulation in 2002; and (4) Superior has sold Healthprints to customers in all fifty states, Puerto Rico, and internationally. Doc. 249 at 8-9 (citing Cullen Decl., Doc. 250). Even drawing all reasonable inferences in favor of Superior, that evidence is insufficient to create a genuine dispute of material fact with respect to the fame of Superior's Healthprint. Superior cites no evidence that supports an inference that the mark is widely recognized, even within the state of Florida. There is no indication that "Healthprint" could be considered a "household name" like Buick, Exxon, Coca-Cola, Wal-Mart, or Budweiser. *See Bentley Motors Corp. v. McEntegart*, 976 F. Supp. 2d 1297, 1313 (M.D. Fla. 2013) (giving examples of the sorts of marks that trademark dilution law is intended to protect). Shaklee is entitled to summary judgment on Count V.

### C. Tortious Interference: Count VII of the Second Amended Complaint

In Count VII of the Complaint, Superior alleges that Shaklee made an intentional and unjustified interference with Superior's business relationships by using an identical mark in commerce and offering

the same services under that mark. Doc. No. 159 at ¶ 114. At the summary judgment stage, the issue is whether Superior advances sufficient record evidence for every element of its tortious interference claim. For the reasons stated below, the Court finds that Superior has failed to do so.

The elements of a claim for tortious interference with an advantageous business relationship are: 1) the existence of a business relationship; 2) the defendant's knowledge of the business relationship; 3) the defendant's intentional and unjustified interference with the business relationship; and 4) actual damage to the plaintiff resulting from the defendant's interference. *Ethan Allen, Inc. v. Georgetown Manor, Inc.*, 647 So. 2d 812, 814 (Fla. 1994). Here, Shaklee disputes the third element, interference with a business relationship. Doc. No. 178 at 27-28. To prove interference, Superior must show that Shaklee "caused a breach or termination of a business relationship or expectancy." *Anthony Distribs., Inc. v. Miller Brewing, Co.*, 941 F. Supp. 1567, 1572 (M.D. Fla. 1996) (citing *Smith v. Ocean State Bank*, 335 So. 2d 641, 643 (Fla. 1st DCA 1976)). "The requisite showing of causation cannot be supported by mere supposition that defendant's interference caused the cessation of the business relationship." *Enteris Biopharma, Inc. v. Clinical Pharmacology of Miami, Inc.*, No. 1:14-cv-22770-UU, 2015 WL 12085848, at * 10 (S.D. Fla. Mar. 20, 2015) (citing *Realauction.com, LLC v. Grant St. Grp., Inc*., 82 So. 3d 1056, 1059 (Fla. 4th DCA 2011)).

Shaklee argues that Superior has failed to provide any evidence regarding interference with a business relationship because it failed to identify any business relationship that was disrupted as a result of Shaklee's alleged interference. Doc. No. 178 at 27-28. In support, Shaklee cites testimony from Terence Cullen, Superior's corporate representative.[2] Doc. No. 258 at 10 (citing Doc. No. 258-5 at 6; Doc. No. 258-6).

---

[2] Superior designated Mr. Cullen as its corporate representative with regard to areas of inquiry numbers twenty-two and twenty-three, which include the identities of customers that Superior contends Shaklee interfered with as alleged in Count VII of the Complaint; and the identity and nature of the business relationship or agreement with customers that would have been completed

Mr. Cullen testified that Superior has seen a reduction in existing customers who purchased new blood tests. Doc. No. 258-6 at 4, 8. Superior also relies on a declaration from Eleanor Cullen stating that the percentage of Superior's clients from existing business relationships increased from 61.2 percent in 2012 to 73.8 percent in 2016. Doc. No. 249 at 9 (citing Doc. No. 250 at 5). Such evidence does not demonstrate that Shaklee caused a breach or termination of any of Superior's business relationships. *See Anthony Distribs., Inc.*, 941 F.Supp. at 1572-73 (granting summary judgment on a tortious interference claim because the plaintiff "fails to present sufficient record evidence of interference."). [Superior presents no evidence connecting the decrease in customers to Shaklee's alleged interference. *See Bayley Prods., Inc. v. Cole*, 720 So. 2d 550, 551 (Fla. 4th DCA 1998) (finding that the trial court should have granted a motion for directed verdict on a tortious interference claim because the plaintiff "presented no evidence . . . to connect the loss of any customer's business to the alleged tortious conduct of [the defendant]."). General decline is not sufficient to raise an inference of causality.

Because Superior has failed to provide sufficient evidentiary support as to the third element of its tortious interference claim, Shaklee is entitled to judgment as a matter of law on Count VII of the Complaint.

### D. Invalidity of Mark: Count II of the Counterclaim

In Count II of the Counterclaim, Shaklee seeks declaratory relief in the form of a finding that the Superior's Healthprint mark for goods (as opposed to services) is invalid due to either fraudulent representations that that the mark "was in use for supplements" or, in the alternative, due to abandonment of the mark with respect to supplements. Doc. 166 at 39-40. Superior argues that both of those grounds are frivolous. Doc. 187 at 16, 19.

---

had Shaklee not interfered as alleged in Count VII of the Complaint. Doc. No. 258-5 at 6.

"Fraud in obtaining a trademark occurs 'when an applicant knowingly makes false, material representations of fact in connection with an application' or in a verified declaration." *Spiral Direct, Inc.*, 151 F. Supp. 3d 1268, 1277 (M.D. Fla. 2015) (quoting *Traffic Control, Inc. v. Shadow Network Inc.*, 104 F.3d 336, 340 (Fed. Cir. 1997)). A trademark is deemed abandoned "[w]hen its use has been discontinued with intent not to resume such use." 15 U.S.C.. § 1127. To prove abandonment of a trademark, a defendant must establish two elements: "[1] that the plaintiff has ceased using the mark in dispute and [2] that he has done so with an intent not to resume its use." *Cumulus Media, Inc. v. Clear Channel Commc'ns, Inc.*, 304 F.3d 1167, 1174 (11th Cir. 2002). For the purposes of the Lanham Act, "use" is defined as "the bona fide use of such mark made in the ordinary course of trade, and not made merely to reserve a right in a mark." 15 U.S.C. § 1127. "Thus, neither promotional use of the mark on goods in a different course of trade nor mere token use constitute 'use' under the Lanham Act." *Emergency One, Inc. v. Am. FireEagle, Ltd.*, 228 F.3d 531, 536 (4th Cir. 2000) (citing *Imperial Tobacco, Ltd. v. Phillip Morris, Inc.*, 899 F.2d 1575, 1592–83 (Fed. Cir. 1990)). Further, an intent not to resume use of a trademark "may be inferred from the circumstances." 15 U.S.C. § 1127.

There are disputed issues of material fact with respect to Count II of the Counterclaim. Pictures of supplements bearing the Healthprint mark and the declaration of Mrs. Cullen indicating that, within the past ten years, Superior provided 1,200 Healthprint supplements to a radio show are simply not enough. While Superior makes much of the distinction between use of the mark generally and use of the mark for the purpose of supplement sales, there are material factual disputes with respect to other uses of the mark for nutritional supplements. Accordingly, Superior is not entitled to summary judgment on Count II of the Counterclaim.

### E. FDUPTA: Count III of the Counterclaim

In Count III of the Counterclaim, Shaklee alleges that Superior advertises its blood testing services along with promises of identifying, diagnosing, and treating a wide range of diseases and disorders. Doc. No. 166 at ¶ 52. Shaklee also alleges that Superior's promises of diagnosis and treatment constitute the practice of medicine under Fla. Stat. § 458.305(3), but Superior is not licensed to do the same.[3] *Id.* at ¶ 53. Shaklee seeks declaratory and injunctive relief under FDUTPA, arguing that it is aggrieved by Superior's recommendations of Shaklee supplements as a cure for diseases and disorders.[4] *Id.* at ¶ 56. More specifically, Shaklee argues that Superior's recommendations will tarnish Shaklee's reputation and may expose it to liability from those who allegedly received treatment from Ms. Cullen. Doc. No. 248 at 22.

FDUTPA prohibits "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce." Fla. Stat. § 501.204(1). Anyone "aggrieved" by a FDUTPA violation may bring an action for declaratory and injunctive relief. Fla. Stat. § 501.211(1). To be entitled to declaratory and injunctive relief under FDUTPA, the plaintiff must show that: 1) the defendant engaged in a deceptive act or unfair practice; and 2) the plaintiff is aggrieved by that act or practice. *CareerFairs.com v. United Bus. Media LLC*, 838 F. Supp. 2d 1316, 1324 (S.D. Fla. 2011).

Three of Superior's arguments assert that Shaklee cannot satisfy the first element of a FDUTPA claim. Doc. No. 187 at 21-26, 29-32. Superior's first argument states that Fla. Stat. § 458.305(3) cannot serve as a predicate for a per se FDUTPA violation. *Id.* at 21-23. Shaklee responds by arguing that it

---

[3] Fla. Stat. § 458.305(3) defines "practice of medicine" as "the diagnosis, treatment, operation, or prescription for any human disease, pain, injury, deformity, or other physical or mental condition." Fla. Stat. § 458.305(3).

[4] Shaklee does not seek monetary damages. Doc. No. 166 at 41.

does not solely allege a per se violation of FDUTPA, but also alleges that Superior's actions constitute a deceptive act or unfair practice. Doc. No. 248 at 18-21.

There are two ways to satisfy the first element of a FDUTPA claim: 1) a per se violation based on the violation of another law proscribing a certain deceptive act or unfair practice; or 2) proof that the defendant engaged in a deceptive act or unfair practice. *State Farm Mut. Auto. Ins. Co. v. Performance Orthopedics & Neurosurgery, LLC*, 278 F. Supp. 3d 1307, 1326 (S.D. Fla. 2017) (citation omitted). Per se FDUTPA violations are based on the language of Fla. Stat. § 501.203(3)(c), which states that a violation of any "law, statute, rule, or ordinance which proscribes unfair methods of competition, or unfair, deceptive, or unconscionable acts or practices" is a basis for a FDUTPA violation. Fla. Stat. § 501.203(3)(c). While Shaklee cites Fla. Stat. § 458.305(3) in Count III, it also alleges that Superior "is engaged in the <u>deceptive practice</u> of advertising and engaging in the unlicensed practice of medicine." Doc. No. 166 at ¶ 51 (emphasis added). Thus, Shaklee does not solely allege a per se FDUTPA violation based on Fla. Stat. § 458.305(3). *Id.* Instead, a fair reading of Count III of the Counterclaim is that Shaklee alleges both a deceptive practice of the unlicensed practice of medicine and the deceptive use of its supplements for treating medical conditions. Doc. No. 166 at ¶¶ 51-56. Accordingly, the Court finds Superior's first argument unavailing.

Superior's second argument states that summary judgment should be granted in its favor because the claim that Ms. Cullen is engaged in the unlicensed practice of medicine must be brought before the Florida Board of Nursing, as Ms. Cullen is a nurse who was previously licensed in Florida. Doc. No. 187 at 23-26. In other words, Superior argues that the Florida Board of Nursing has exclusive jurisdiction over discipline for actions relating to nursing. *Id.* The Court is unpersuaded for two reasons. First, Count III does not seek disciplinary action against a nurse – rather it is a claim against a corporation. Doc. No. 166 at ¶¶ 51-56. Second, other courts have found that unlicensed practices can be the basis of a FDUTPA violation. *See In Re Samuels*, 176 B.R. 616, 625-26 (Bankr. M.D. Fla. 1994) (finding a layperson's unauthorized practice of law a deceptive act under FDUTPA); *State Farm Mut. Auto. Ins. Co. v. Med.*

*Serv. Cent. of Fla.*, 103 F. Supp. 3d 1343, 1354 (S.D. Fla. 2015) (granting summary judgment on a FDUTPA claim after finding that the defendants engaged in "unfair and deceptive acts and practices" by unlawfully operating medical clinics without a license). Thus, the fact that Shaklee's FDUTPA claim is based on Ms. Cullen's alleged unlicensed practice of medicine does not divest this Court of jurisdiction over Shaklee's FDUTPA claim. *See id.* Accordingly, Superior's second argument is rejected based on what is pled in Count III and the law governing such claims.

Superior's third argument states that because nutritional supplements are legally defined as food rather than drugs, there is no record evidence showing that it "prescribed" any Shaklee supplements for the purpose of diagnosing, curing, or treating any disease. Doc. No. 187 at 29-31. Superior seemingly attempts to restrict Shaklee's FDUTPA claim to Superior "prescribing" Shaklee supplements based on the express allegation of the same in the Counterclaim (Doc. No. 166 at ¶ 55) and Fla. Stat. § 458.305(3), which defines the practice of medicine as including "prescription for human disease . . ." Fla. Stat. § 458.305(3). However, Section 458.305(3) also includes the "treatment" of any human disease in the definition of the practice of medicine. *See id.* Because Shaklee also generally alleges that Superior engaged in the unlicensed practice of medicine, a fair reading of the claim would also encompass the use of Shaklee supplements to treat human disease.

Shaklee argues that the record is replete with evidence showing the prescription of supplements for the treatment of disease. Doc. No. 248 at 21-22. In support of its position, Shaklee cites the testimony of Dr. Arthur Herold, Shaklee's expert on the unlicensed practice of medicine, who testified that Ms. Cullen's actions constitute the practice of medicine. Doc. No. 248 at 21 (citing Doc. No. 248-15 at 6-12). Specifically, Dr. Herold testified that Ms. Cullen engaged in the practice of medicine by advertising to the public that her blood tests can inform a customer about certain aspects of their health and by making recommendations based on such tests. Doc. No. 248-15 at 6-7, 9.

Shaklee also cites internal e-mails from Superior purportedly showing Ms. Cullen providing medical advice to customers through her staff and encouraging her staff to give such medical advice

orally, rather than in writing. Doc. No. 248 at 21 (citing Doc. No. 248-12, 248-13). Specifically, Shaklee cites to an internal e-mail regarding a customer seeking Ms. Cullen's advice on a tumor found by his doctor.[5] *Id.* (citing Doc. No. 248-12). The customer wanted to know whether a biopsy recommended by his doctor would cause his cancer to spread. Doc. No. 248-12. Ms. Cullen's response to the email directs the staff member to "[v]erbally NOT in writing" tell the customer that if she were her husband she would advise the customer to wait one month before undergoing the biopsy. *Id.* Ms. Cullen also directs the staff member to offer supplements and testing at discounted rates. *Id.*

Finally, Shaklee cites a document labeled "Additional Shaklee Products and Their Relevant [Superior] Blood Tests" (the "Shaklee Products Spreadsheet"). Doc. No. 248 at 23 (citing Doc. No. 248-20). The document lists specific health conditions, including heart disease, cancer, and diabetes, and correlates such conditions to specific Shaklee products.[6] Doc. No. 248-20.

There is no dispute that Superior regularly recommended Shaklee supplements. Doc. No. 20 at ¶ 22. Considering all of the above-referenced evidence, the Court finds that Shaklee has presented enough evidence to create a genuine issue of material fact as to whether Superior engaged in a deceptive practice of the unlicensed practice of medicine and the deceptive use of Shaklee supplements for treating medical conditions. Accordingly, the Court finds Superior's third argument unavailing.

---

[5] The customer apparently spoke with Ms. Cullen during one of her radio shows. Doc. No. 248-12.

[6] Superior states that this document is not authenticated and that Shaklee does not identify its author. Doc. No. 259 at 11. Summary judgment evidence, however, does not have to be admissible under the Federal Rules of Evidence, so long as it could be reduced to an admissible form at trial. *See McMillian v. Johnson*, 88 F.3d 1573, 1584 (11th Cir. 1996) ("We read this statement as simply allowing otherwise admissible evidence to be submitted in inadmissible form at the summary judgment stage, though at trial it must be submitted in admissible form."). The document provides Superior's contact information and connects Shaklee products to specific Superior blood tests. Doc. No. 248-20. Thus, the Court finds that the document could likely be admissible as an admission of a party opponent.

Superior's final argument focuses on the second element of a FDUTPA claim. Doc. No. 187 at 26-29. Specifically, Superior argues that Shaklee has failed to provide any evidence showing that it is aggrieved under FDUTPA. *Id.*; Doc. No. 259 at 9-10 ("Shaklee has not come forth with any evidence that it has suffered *any* diminution of goodwill, reputation, or that it has lost a single customer from Superior's alleged misconduct."). Shaklee, on the other hand, argues that there is "ample evidence" that it is aggrieved by Superior's actions, stating that Superior is portraying Shaklee supplements in a false light – as treatment for cures for serious medical conditions. Doc. No. 248 at 22-23.[7]

Shaklee seeks only injunctive and declaratory relief under FDUTPA, and therefore, it must show that it is aggrieved by Superior's deceptive act or unfair practice. *CareerFairs.com*, 838 F. Supp. 2d at 1324.[8] "[A]n 'aggrieved' person for the purposes of [FDUTPA] must be able to demonstrate some specific past, present, or future grievance." *Ahearn,* 180 So. 3d at 173. However, the injury claimed cannot be "merely speculative." *See id.*

In support of its argument for summary judgment, Superior presents affidavits from four individuals identified by Marjorie Fine, Shaklee's corporate representative, as having been diagnosed, treated, or cured by Ms. Cullen. Doc. No. 187 at 26-27 (citing Doc. No. 225 at 59-60). Such affidavits state that Ms. Cullen did not diagnose, treat, or cure any disease during any consultation. Doc. No. 203 at 2; Doc. No. 205 at 2; Doc. No. 206 at 2; Doc. No. 207 at 2. Superior also cites Ms. Fine's testimony

---

[7] Shaklee asserts this argument despite maintaining that there is no likelihood of confusion between the parties' products. Doc. No. 178 at 15. Indeed, Shaklee states that it and Superior "are plainly not in the same business." *Id.* at n. 10.

[8] Shaklee is not required to show actual damages. *Omni Healthcare, Inc. v. Health First, Inc.*, No. 6:13-cv-1509-Orl-37DAB, 2016 WL 4272164, at * 24 (M.D. Fla. Aug. 13, 2016) (citing *Ahearn v. Mayo Clinic*, 180 So. 3d 165, 172–73 (Fla. 1st DCA 2015)) (noting that FDUTPA's injunctive relief provision provides broader relief than its damages provision).

stating that she was unable to identify any other customers whom Ms. Cullen diagnosed, treated, or cured. Doc. No. 187 at 27 (citing Doc. No. 225 at 68-71).[9]

In opposing summary judgment, Shaklee relies on the Shaklee Products Spreadsheet.[10] Doc. No. 248-20. Shaklee also cites the testimony of Barbara Langoni, a Shaklee distributor and Superior client, who testified that: 1) Ms. Cullen stated that Ms. Langoni's blood tests indicated that she was "heading towards some disease"; 2) Ms. Cullen would make diet and supplement recommendations; and 3) over time, Ms. Cullen became her doctor, and Ms. Langoni used her for all medical advice. Doc. No. 248 at 23 (citing Doc. No. 248-21 at 4).

Superior argues that Ms. Cullen's testimony does not preclude summary judgment in its favor because there is nothing in her deposition suggesting that Superior diagnosed Ms. Langoni with any disease or prescribed any Shaklee products to Ms. Langoni. Doc. No. 259 at 10. Superior is correct that the portion of Ms. Langoni's testimony cited by Shaklee does not mention a specific diagnosis or a prescription of Shaklee supplements. Doc. No. 248-21 at 4. Nevertheless, as stated above, Superior does not dispute that it regularly recommended Shaklee supplements to its clients. Doc. No. 20 at ¶ 22. Considering all of the aforementioned evidence, the Court finds that Shaklee has presented enough evidence to create a genuine issue of material fact as to whether it was aggrieved by Superior's alleged unlicensed practice of medicine and deceptive use of Shaklee supplements for treating medical conditions. Accordingly, the Court finds that Superior is not entitled to summary judgment as to Count III of the Counterclaim.

---

[9] Ms. Fine's testimony, however, also states that she was unable to identify such individuals because Ms. Cullen made sure not to respond in writing to any customers whom she diagnosed, treated, or cured. Doc. No. 225 at 68-71.

[10] *See supra* n. 6.

### F. Damages

Shaklee also moves for summary judgment with respect to certain aspects of Superior's claim for damages. The Court finds it premature to address those issues at this time, and therefore defers consideration thereof.

### IV. Conclusion

For the foregoing reasons, Shaklee's Motion for Summary Judgment (Doc. 178) is **GRANTED** as to Counts V and VII of the Second Amended Complaint and **DENIED** as to all other counts. Superior's Motion for Summary Judgment (Doc. 187) is **DENIED**.

**DONE** and **ORDERED** in Chambers, Orlando, Florida on April 16, 2018.



GREGORY A. PRESNELL
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties