# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**SUPERIOR CONSULTING SERVICES, INC.,**

      **Plaintiff,**

**v.**                                        Case No: 6:16-cv-2001-Orl-31GJK

**SHAKLEE CORPORATION and SHAKLEE U.S., LLC,**

      **Defendants.**

## ORDER

This matter comes before the Court after an evidentiary hearing on the Defendant's Motion to Exclude David Dieterle under *Daubert* (Doc. 174) and the Plaintiff's Response (Doc. 241).

### I. Factual Background and Procedural History

Superior owns two Florida fictitious business entities called "Your Future Health" and "YFH" (collectively "Superior"). Doc. 20 ¶ 5. Eleanor Cullen owns and operates Superior. Superior's "primary objective is the early detection of disease, through performing certain laboratory tests, including blood tests, for consumers." *Id.* ¶ 7. Superior accomplishes its objective by creating a profile "customized to a client's unique biochemistry," called a "Healthprint." *Id.* ¶ 11. Superior has registered the mark "Healthprint" twice with the United States Patent and Trademark Office ("USPTO"). Registration number 2646571 was obtained on November 5, 2002, and registration number 2928465 was obtained on March 1, 2005. Doc. 20 ¶¶ 14, 16. The USPTO did not require proof of a secondary meaning for either mark. *Id.* ¶ 18. On November 8, 2008, and February 5, 2011, Superior filed declarations of incontestability for the marks.

On June 8, 2016, Shaklee, a corporation that manufactures and distributes nutritional supplements, beauty products, and household-cleaning products, filed a trademark application with the USPTO claiming a similar "Healthprint" mark. Shaklee's Healthprint refers to a free, online survey that consists of twenty-two questions about a client's personal characteristics, habits, and goals. Doc. 43–8 ¶ 13. Once the client answers all of the questions, he or she is presented with "a customized set of Shaklee products that fits [his or her] health goals, needs and budget." Doc. 43–7, Ex. 1 at 1.

On December 14, 2017, Superior filed its Second Amended Complaint alleging trademark infringement and violations of the Florida Deceptive and Unfair Trade Practices Act. Doc. 159. On January 2, 2018, Shaklee filed its Answer, Affirmative Defenses, and Counterclaim. Doc. 166.

On January 12, 2018, Shaklee filed the Motion to Exclude David Dieterle under *Daubert*. Doc. 174. On February 2, 2018, Superior filed its Response. Doc. 241. The Court held an evidentiary hearing on May 3, 2018. Doc. 307.

## II.  Legal Standards

Federal Rule of Evidence 702 governs the admission of expert witness testimony. It provides that:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. The proponent of the opinion testimony has the burden of establishing each precondition to admissibility by a preponderance of the evidence. *Rink v. Cheminova, Inc.*, 400 F.3d 1286, 1292 (11th Cir. 2005).

In *Daubert v. Merrill Dow*, 509 U.S. 579 (1993), the Supreme Court admonished trial courts to fulfill a gatekeeping role in the presentation of expert testimony. To guide district courts' assessments of the reliability of an expert's testimony, the Supreme Court identified four factors that district courts should consider: (1) whether the expert's methodology has been tested or is capable of being tested; (2) whether the theory or technique used by the expert has been subjected to peer review and publication; (3) whether there is a known or potential error rate of the methodology; and (4) whether the technique has been generally accepted in the relevant scientific community. *See id.* at 593–94. At the same time, the Court has emphasized that these factors are not exhaustive and are intended to be applied in a "flexible" manner. *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 141 (1999). District courts are charged with this gatekeeping function "to ensure that speculative, unreliable expert testimony does not reach the jury" under the mantle of reliability that accompanies the appellation "expert testimony." *Rink*, 400 F.3d at 1291 (quoting *McCorvey v. Baxter Healthcare Corp.*, 298 F.3d 1253, 1256 (11th Cir. 2002)).

### III. Analysis

The Plaintiff seeks disgorgement of profits under Section 1117 of the Lanham Act. Doc. 241 at 16. Under that statute and related case law, the Plaintiff has the burden of introducing evidence of the Defendant's gross sales. *See Axiom Worldwide, Inc. v. HTRD Grp. Hong Kong Ltd.*, No. 8:11-CV-1468-T-33TBM, 2013 WL 3975675, at *11 (M.D. Fla. July 31, 2013), *aff'd sub nom. Axiom Worldwide, Inc. v. Excite Med. Corp.*, 591 F. App'x 767 (11th Cir. 2014).[1] The Plaintiff proffers the

---

[1] The Defendant argues that this burden extends to showing those particular gross sales that

testimony of Dieterle to meet its burden. Dieterle performed a Google Analytics survey of Shaklee's web traffic and computed online sales to customers who either viewed Shaklee's Healthprint mark (in the amount of approximately $8 million) or completed a Healthprint questionnaire (in the amount of approximately $4 million). Shaklee contends that Dieterle's method is unreliable, because he failed to use available information to remove sales of non-related products, such as beauty and household cleaning products. Doc. 174 at 3.[2]

While the sale of supplements would be directly related to the alleged infringement, the Plaintiff contends that customers who viewed or used the Healthprint questionnaire could have been influenced to buy the other products as well, and that it is reasonable to include these products in the calculation of gross sales, leading to the calculation of approximately $4 million in relevant gross sales. In the Court's opinion, the sale of these other products could be reasonably related to the alleged infringement. The Defendant will have the opportunity at trial to refute this claim and contest the Plaintiff's calculation of gross sales. The Court finds Dieterle's methodology reliable with respect to this gross sales calculation.[3]

---

are reasonably related to the infringing mark. *Cf. Thornton v. J Jargon Co.*, 580 F. Supp. 2d 1261, 1280 (M.D. Fla. 2008). The Plaintiff argues that the sales need not be reasonably related in a trademark infringement case where disgorgement of profits is being sought. Doc. 241 at 16. While it is true that the Plaintiff should show evidence of gross sales that are relevant to the infringing mark, this contention does not help the Defendant, because the sales calculated by Dieterle are reasonably related to the alleged infringement.

[2] Shaklee concedes Mr. Dieterle's qualification as an expert in the field, and the relevance prong of Rule 702 is clearly met.

[3] With respect to the other calculation of approximately $8 million, the Court finds that Dieterle's methodology is unreliable. Mere viewing of the Healthprint mark was the basis of this gross sales calculation, and indeed, at the evidentiary hearing, the Plaintiff seemed to concede that the calculation of approximately $4 million was the appropriate one.

Shaklee argues that Dieterle's testimony related to an alleged web traffic surge is unreliable because it is not an "apples to apples" comparison. Doc. 174 at 3. Shaklee explains that, after its Healthprint launch, it began tracking different domains through Google Analytics. Doc. 174 at 8-9. Thus, Shaklee argues, Dieterle's comparison of pre- and post- August 2016 web traffic involving Shaklee's Google Analytics account is not a valid comparison. At the evidentiary hearing, Dieterle testified that he was unaware of the particular Shaklee domains tracked by Google Analytics before and after August 2016. A comparison of web traffic from two different time periods that fails to match the domains being tracked during each time period is an unreliable one. Accordingly, the Court finds that Dieterle's methodology is unreliable with respect to the web traffic comparison.

**IV.     Conclusion**

For the foregoing reasons, the Defendant's Motion to Exclude David Dieterle under Daubert (Doc. 174) is **GRANTED** with respect to web traffic, but **DENIED** in all other respects. At trial, Dieterle may present the $4,064,939.78 gross sales number to the jury.

**DONE** and **ORDERED** in Chambers, Orlando, Florida on May 9, 2018.

GREGORY A. PRESNELL
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Party