UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

SUPERIOR CONSULTING SERVICES,
INC.,

           Plaintiff,

v.                                          Case No:   6:16-cv-2001-Orl-31GJK

SHAKLEE CORPORATION and
SHAKLEE U.S., LLC,

           Defendants.

---

# REPORT AND RECOMMENDATION

      This cause came on for consideration without oral argument on the following motion filed herein:

| | |
|---|---|
| **MOTION:** | **PLAINTIFF'S *DAUBERT* MOTION AS TO ARTHUR HEROLD, M.D. (Doc. No. 183)** |
| **FILED:** | **January 12, 2018** |

**THEREON** it is **RECOMMENDED** that the motion be **DENIED**.

## I.    FACTUAL BACKGROUND

      On December 14, 2017, Plaintiff filed the operative complaint against Defendants. Doc. No. 159. Central to Plaintiff's claims is Defendants' alleged use of Plaintiff's marks for Healthprint. *Id.* at 4-14. Healthprint is an assessment tool created by Eleanor Cullen, which constructs a personalized plan to achieve better health for the user.[1] *Id.* at 5.

---

[1] Ms. Cullen owns Plaintiff. Doc. No. 159 at 2.

On January 2, 2018, Defendants filed their answer, affirmative defenses, and counterclaim (the "Counterclaim"). Doc. No. 166. Count III of the Counterclaim alleges that Plaintiff violated Florida's Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501.201 *et seq*. *Id.* at 40-41. Specifically, Count III of the Counterclaim alleges that Plaintiff, particularly Ms. Cullen, engaged in a deceptive practice by practicing medicine without a license and using Defendants' supplements for treating medical conditions. *Id.*

In support of their allegation that Plaintiff engaged in the unlicensed practice of medicine, Defendants submitted the report of Dr. Arthur Herold (the "Report"), a licensed medical doctor and associate professor of medicine at the University of South Florida College of Medicine. Doc. No. 183-1. Dr. Herold concludes that because Ms. Cullen and her staff are not licensed to give medical advice, Plaintiff engaged in the unlicensed practice of medicine for three reasons. *Id.* at 1-6. First, Dr. Herold states that Ms. Cullen and her staff were prescribing supplements to the consuming public. *Id.* at 3-4. In support of this first reason, Dr. Herold notes Ms. Cullen's appearance on a television program and advising a person preparing for surgery to take alfalfa to prevent excessive bleeding during surgery. *Id.* at 4. Dr. Herold also notes Ms. Cullen's e-mails directing her staff to "verbally, NOT in writing" tell customers to take supplements to treat knee problems and cancer. *Id.* at 3-4.

Second, Dr. Herold states that Plaintiff engaged in the unlicensed practice of medicine by stating that her blood tests can help customers detect diseases, such as cancer, fibromyalgia, heart disease, osteoporosis, and diabetes, well before standard blood tests are able to make such detections. Doc. No. 183-1 at 4-5. In support of this reason, Dr. Herold cites to portions of Ms. Cullen's book, which is entitled "Normal Blood Test Scores Aren't Good Enough", and Plaintiff's advertisements. *Id.* at 5.

Third, Dr. Herold states that Plaintiff engaged in the unlicensed practice of medicine by interpreting the results of customers' blood tests. Doc. No. 183-1 at 5-6. Specifically, Dr. Herold notes that those customers who took a Healthprint blood test received their results indicating whether their test scores were within a normal range and also received recommendations for supplements, dietary changes, and normalizing any abnormal blood test scores. *Id.* at 5. Dr. Herold also notes that the score ranges for such blood tests have not been published or verified against any accepted medical standards, but "are based on a secret database that Mrs. Cullen has prepared during her 'career in healthcare.'" *Id.*

On January 12, 2018, Plaintiff filed a motion (the "Motion") requesting that the Court exclude the Report for four reasons. Doc. No. 183. First, Plaintiff argues that Dr. Herold is not competent to testify as to a nurse's standard of care. *Id.* at 2, 6-11. Second, Plaintiff argues that the Report should be stricken because it is based purely on Dr. Herold's personal opinion and not on any reliable methodology. *Id.* at 3, 11-12. Third, Plaintiff argues that the Report should be stricken as unhelpful to the jury because it is unfairly prejudicial and likely to cause confusion. *Id.* at 12-14. Fourth, Plaintiff argues that the Report should be stricken because it fails to list all other cases from the previous four years in which Dr. Herold testified, and thus, fails to comply with Federal Rule of Civil Procedure 26(a). *Id.* at 3, 14-17.[2] Dr. Herold has since provided an updated case list detailing his testimony from the last four years. Doc. No. 240 at 10.

On May 25, 2018, the undersigned held an evidentiary hearing on the Motion. Doc. No. 318. Dr. Herold testified that he based his findings on his education, training, and experience.[3] Dr. Herold's testimony primarily focused on three specific issues. First, Dr. Herold testified about why

---

[2] Attached to the Report is a list of cases from 2003 to 2014 in which Dr. Herold provided testimony in deposition and/or at trial. Doc. No. 183-1 at 24-30.

[3] Dr. Herold's curriculum vitae sets forth his education, training, and experience as a physician.

he believes he is qualified to testify about the proper scope of practice for a registered nurse. Plaintiff cross-examined Dr. Herold regarding his qualifications to opine upon this issue. Dr. Herold testified that he is not a registered nurse, but he has experience both in training registered nurses and working with them. Dr. Herold states that based on such experience, he is able to opine upon the appropriate scope of practice for a registered nurse and whether an act falling outside that scope constitutes the practice of medicine.[4]

Second, Dr. Herold testified that registered nurses are generally not allowed to: 1) interpret blood test results; 2) prescribe medication; or 3) diagnose and treat disease.[5] Dr. Herold then testified that a doctor may adopt a qualifying written protocol that allows a registered nurse to communicate blood test results with a patient. On cross-examination, Plaintiff asked Dr. Herold whether his opinion would change if it produced such a protocol. Dr. Herold stated that his opinion may change provided that he is given an opportunity to review the protocol and finds it to be sufficient. Dr. Herold testified that he requested any similar protocol from Plaintiff but did not receive one. Plaintiff represented that it has a protocol allowing Ms. Cullen to interpret Healthprint blood test results and communicate with her clients regarding the same, but such protocol was not produced. The undersigned issued an ore tenus order directing Plaintiff to produce such protocol.

Third, Dr. Herold testified that there is a national standard of care providing for distinct scopes of practice between registered nurses and physicians. Plaintiff cross-examined Dr. Herold as to whether he was familiar with certain states' laws regarding the proper scope of practice for a registered nurse. Dr. Herold testified that he reviewed those laws and found no material

---

[4] Defendants also cite Eleventh Circuit authority and argue that such authority stands for the proposition that a physician is qualified to testify as to a nurse's standard of care. *See Adams v. Lab. Corp. of Am.*, 760 F.3d 1322, 1338-39 (11th Cir. 2014) (quoting *McDowell v. Brown*, 392 F.3d 1283, 1296 (11th Cir. 2004)).

[5] Dr. Herold testified that he prescribed medications and supplements in his practice.

differences.[6] While Dr. Herold recognized that each state has law governing the proper scope of practice for a registered nurse, he testified that the national standard of care he applied is based on education, certification, and the practice of nursing. Specifically, Dr. Herold testified that such national standard of care and distinct scopes of practice are taught in medical schools throughout the country, and such schools are accredited by national boards setting such standards.

The Court also inquired whether Dr. Herold testified about the practice of medicine within the last four years. Dr. Herold stated that he provided testimony regarding what constitutes the practice of medicine in two other cases. Defendants represented that such testimony was not fully produced in this case. The undersigned issued an ore tenus order directing Defendants to produce all of Dr. Herold's expert reports and transcripts of his deposition and trial testimony in those cases by May 30, 2018, the same date Plaintiff was ordered to produce the above-referenced protocol. *See supra* p. 4.

The parties have filed notices of supplemental authority. Doc. Nos. 315, 321. Defendant's notice provides supplemental authority standing for the proposition that a failure to produce a complete case list with an expert report does not warrant exclusion under Rule 26. Doc. No. 315 (citing *Foreman v. Am. Rd. Lines, Inc.*, 623 F. Supp. 2d 1327 (S.D. Ala. 2008); *Malibu Media, LLC v. Harrison*, 1:12-CV-01117-WTL, 2014 WL 5598582 (S.D. Ind. Nov. 3, 2014)). Plaintiff's notice provides supplemental authority in which the Missouri Supreme Court held that the acts of certain nurses were authorized under Missouri's nursing statute, Mo. Rev. Stat. § 335.011 *et seq.*, and thus, did not constitute the unlicensed practice of medicine. Doc. No. 321 (citing *Sermchief v. Gonzales*, 660 S.W. 2d 683, 689 (Mo. 1983)).

---

[6] At the hearing, Plaintiff never provided any detailed explanation regarding these purported differences in state law.

## II.     APPLICABLE LAW

Federal Rule of Evidence 702 states:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a)  the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. In *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147 119 S.Ct. 1167, 1174, 1343 L.Ed.2d 238 (1999), the Supreme Court held that the trial court must perform a "gatekeeper" function designed to ensure that any and all expert testimony is both relevant and reliable. When determining the admissibility of expert testimony under Rule 702, the Court considers whether the: 1) expert is qualified to testify competently regarding the matters addressed; 2) methodology by which the expert reaches their conclusion is sufficiently reliable; and 3) testimony assists the trier of fact to understand the evidence or to determine a fact in evidence. *See Quiet Tech. DC-8 Inc. v. Hurel-Dubois UK Ltd.*, 326 F.3d 1333, 1340-41 (11th Cir. 2013). The Eleventh Circuit has recognized "some overlap among [these] requirements [but] they remain distinct concepts and the courts must take care not to conflate them." *United States v. Frazier*, 387 F.3d 1244, 1260 (11th Cir. 2004). "The burden of laying a proper foundation for the admissibility of an expert's testimony is on the party offering the expert, and the admissibility must be shown by a preponderance of the evidence." *Allison v. McGhan Med. Corp.*, 184 F.3d 1300, 1306 (11th Cir. 1999).

"While scientific training or education may provide possible means to qualify, experience in a field may offer another path to expert status." *Frazier*, 387 F.3d at 1260. Rule 702 provides that an expert's opinion may be based on their knowledge, skill, experience, training, or education. Fed. R. Evid. 702. An expert, however, must provide reliable testimony. *Quiet Tech. DC-8, Inc.*, 326 F.3d at 1341. Thus, if an expert witness "is relying solely or primarily on experience, then the witness must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts." *Frazier*, 387 F.3d at 1260 (citing Committee Note to the 2000 Amendments of Rule 702). "An expert's unexplained assurance that [their] opinions rest on accepted principles is not enough." *Clena Invs., Inc. v. XL Specialty Ins. Co.*, 280 F.R.D. 653, 663 (S.D. Fla. 2012) (citations omitted).

To determine the reliability of an expert's testimony, the Supreme Court identified four factors that district courts should consider: 1) whether the expert's methodology has been tested or is capable of being tested; 2) whether the theory or technique used by the expert has been subjected to peer review and publication; 3) whether there is a known or potential error rate of the methodology; and 4) whether the technique has been generally accepted in the relevant scientific community. *Daubert v. Merrell Dow Pharms.*, 509 U.S. 593–94, 113 S.Ct. 2786, 2797, 125 L.Ed.2d (1993). Such factors, however, are not exhaustive and are intended to be applied in a "flexible" manner. *Kumho Tire Co.*, 526 U.S. at 141. Courts within the Eleventh Circuit have recognized that in cases with non-scientific expert opinions, the *Daubert* factors may not be helpful in determining the reliability of an expert's methodology. *See Regions Bank v. Kaplan*, 8:12-cv-1837-T-17MAP, 2017 WL 1148322, at * 3 (M.D. Fla. Mar. 24, 2017) ("The opinions at issue are not scientific opinions and do not apply scientific techniques or theories; the *Daubert* factors as to reliability are not helpful in determining the reliability of the methodology."); *Clena Invs., Inc.*,

280 F.R.D. at 663 ("Turning to the area of non-scientific, experience-based testimony, while these same criteria may be used to evaluate its reliability, sometimes other factors may prove more useful."). Thus, a "district court has considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable." *McDowell v. Brown*, 392 F.3d 1283, 1299 (11th Cir. 2004) (internal quotations and citations omitted).

With regard to expert opinions, it is not the province of the trial court to make "ultimate conclusions as to the persuasiveness of the proffered evidence." *Quiet Tech. DC-8, Inc.*, 326 F.3d at 1341. "Quite the contrary, '[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence.'" *Id*. (quoting *Daubert*, 509 U.S. at 596).

## III.   ANALYSIS

### A.  Competence

Plaintiff's first argument states that Dr. Herold is not competent to testify as to a nurse's standard of care. Doc. No. 183 at 6-11. Plaintiff states that Dr. Herold's knowledge in this area is "conceptual" because he has never practiced with a nurse in any capacity; he has not published any literature on a nurse's standard of care; and his only exposure to a nurse's standard of care was his work as a nursing assistant nearly thirty years ago. *Id.* at 7-8. Defendants argue that Plaintiff mischaracterizes the Report, stating that "a nurse's standard of care has nothing to do with whether or not someone … has engaged in the unlicensed practice of medicine." Doc. No. 240 at 5.

Plaintiff mischaracterizes the opinions found in the Report. Dr. Herold does not opine as to whether Ms. Cullen breached a nurse's standard of care. Doc. No. 183-1 at 1-6. Count III of the Counterclaim alleges that Plaintiff engaged in a deceptive practice by practicing medicine without a license and using Defendants' supplements for treating medical conditions. Doc. No. 166 at 40-

41. In support of those allegations, Dr. Herold provided his opinion as to whether: 1) prescribing supplements to the consuming public; 2) stating that one's blood tests can help people detect diseases before standard blood tests; and 3) interpreting the results of such blood tests constitute the practice of medicine. Doc. No. 183-1 at 1-6. At no point in the Report does Dr. Herold opine that Plaintiff or Ms. Cullen were engaged in nursing.[7] *Id.*

The Eleventh Circuit has held that a physician is qualified to opine upon the standard of care applicable to nurses. *McDowell*, 392 F.3d at 1296. While *McDowell* is a negligence case, it still follows that a physician may be qualified to testify as to the proper scope of practice for a nurse and whether an act falling outside of that scope constitutes the practice of medicine. Dr. Herold's curriculum vitae shows over thirty-five years' experience in the medical field as both a doctor and a professor of medicine. Doc. No. 183-1 at 7-20. He has worked with nurses throughout his career as a doctor and has trained nurses. Dr. Herold's conclusions are based on such experience along with his review of documents such as Plaintiff's internal emails, Ms. Cullen's book, Plaintiff's website, Plaintiff's advertisements, and deposition testimony. *Id.* at 6. Given Dr. Herold's extensive experience in the medical field, Plaintiff's argument regarding Dr. Herold's lack of competence as to a nurse's standard of care is unavailing.

**B. Reliability**

Plaintiff's second argument states that the Report should be excluded because it is based on Dr. Herold's personal experience and "was not supported by valid scientific evidence since his only exposure to the nurse's scope of practice was during a course he took [thirty] years ago." Doc. No. 183 at 11-12. Thus, Plaintiff argues that the Report should be excluded because it does not rely on any reliable methodology. *Id.*

---

[7] Plaintiff's own expert, Michelle Glower, repeatedly stated that Ms. Cullen was "not even working as a nurse." Doc. No. 240-4 at 8-10.

As noted above, an expert witness may rely on personal experience as a basis for their opinion. Fed. R. Evid. 702. If an expert witness, however, "is relying solely or primarily on experience, then the witness must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts." *Frazier*, 387 F.3d at 1260 (citing Fed. R. Evid. 702, Committee Note to 2000 Amendments).

At the hearing, Dr. Herold stated that his findings were based on his education, training, and experience. Dr. Herold testified that he has trained and practiced with registered nurses throughout his career. While Dr. Herold recognized that each state has a statute regarding the scope of practice for a registered nurse, Dr. Herold testified that his findings are based on a national standard of care that provides for distinct scopes of practice between registered nurses and physicians. Dr. Herold states that this standard is based on education, certification, and experience because it is taught at medical schools throughout the country and that such medical schools are accredited by a national board overseeing medical standards.[8] Based on the foregoing, Dr. Herold has provided adequate testimony as to how his experience led to his conclusions, why his experience is a sufficient basis for his opinion, and how his experience applies to this case. *See Frazier*, 387 F.3d at 1260.[9] Thus, Plaintiff's argument as to the Report's reliability is unavailing.

---

[8] In *Sermchief*, the court noted that in and around 1975, Missouri and many other states, including Florida, greatly expanded the scope of authorized nursing practices. *Sermchief*, 660 S.W. 2d at 689-90. At the time of that decision, the Court noted that "[f]orty states currently have broadened nursing practice statutes similar to [Missouri's]." *Id.* at 690 n. 5. That observation seems to suggest that a national standard may exist.

[9] Central to the Court's holding in *Sermchief* was the finding that "[a]ll acts by the nurses were done pursuant to written standing orders and protocols signed by [physicians]" and that the "standing orders and protocols were directed to specifically named nurses …" *Sermchief*, 660 S.W. 2d at 684-85. The Court held:

> [The Missouri legislature] granted nurses the right to make assessments and nursing diagnoses. There can be no question that a nurse undertakes only a nursing diagnosis, as opposed to a medical diagnosis, when she or he finds or fails to find symptoms described by physicians in standing orders and protocols for the purpose of administering courses of treatment prescribed by the physician in such

### C.  Helpfulness

Plaintiff's third argument states that the Report should be stricken because it would not helpful to the jury. Doc. No. 183 at 12-14. Specifically, Plaintiff argues that the Report is unfairly prejudicial and is likely to lead to jury confusion. *Id.* Plaintiff argues that the Report "is so flawed that its probative value is substantially outweighed by the risk of unfair prejudice and the potential that the jury will be misled or confused." *Id.* at 13. In support of its third argument, however, Plaintiff does not identify any specific flaws in the Report. *Id.* at 12-14. Thus, it appears that Plaintiff is relying on its previous two arguments that have been rejected. *Id.* at 12-14.

After considering Dr. Herold's testimony, the Court finds that such testimony would be helpful to the jury. *Quiet-Tech. DC-8 Inc.*, 326 F.3d at 1340-41. A critical issue in this case is whether Plaintiff engaged in the unlicensed practice of medicine. Doc. No. 166 at 40-41. Dr. Herold's experience as a physician gives him specialized expertise on what constitutes the practice of medicine, and thus, his testimony will aid the jury in its determination as to whether Ms. Cullen did so. *See Clena Invs. Inc.*, 280 F.R.D. at 664 ("Expert testimony is helpful to the trier of fact only if it concerns matters that are beyond the understanding of the average lay person.") (internal quotations and citations omitted).[10] Thus, Plaintiff's argument regarding the Report's lack of helpfulness to the jury is unavailing.

---

orders and protocols.

*Id.* at 689-90. *Sermchief* is distinguishable because, at the time of the hearing, no written and signed standing orders or protocols directed to any specific nurses have been introduced in this case.

[10] Plaintiff never argues that Dr. Herold's testimony is within the understanding of the average layperson. Doc. No. 183 at 12-14.

### D.  Deficient Case Summary

Plaintiff's final argument states that the Report should be stricken because the case summary does not comply with Rule 26(a)(2)(B). Doc. No. 183 at 14-18. Attached to the Report is a summary of cases Dr. Herold provided deposition and/or trial testimony in from 2003 to 2014. Doc. No. 183-1 at 24-30. Defendants argue that the failure to provide an updated case summary is harmless because Plaintiff's counsel asked Dr. Herold about his recent cases at his deposition, and Defendants have provided an updated case chronology.[11] Doc. No. 240 at 10-11 (citing Doc. No. 240-2 at 13; Doc. No. 240-5).

Rule 26(a)(2)(B) requires an expert report to contain "a list of all other cases in which, during the previous [four] years, the witness testified as an expert at trial or by deposition." Fed. R. Civ. P. 26(a)(2)(B)(v). "If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). Thus, "the sanction of exclusion is automatic and mandatory unless the sanctioned party can show that its violation of Rule 26(a) was either [substantially] justified or harmless." *Brown v. NCL (Bahamas) Ltd.*, 190 F. Supp. 3d 1136, 1140 (S.D. Fla. 2006) (citing authority).

The Report's initial case summary does not identify any cases from the previous four years in which Dr. Herold provided expert testimony at trial and/or in deposition. Doc. No. 183-1 at 24-30. Thus, the Report must be stricken unless Defendants' non-disclosure was substantially justified or harmless. *Brown*, 190 F. Supp. 3d at 1140. District courts have broad discretion to determine whether a Rule 26(a)(2) violation is harmless. *Thornton v. U.S.,* No. CV 111–106, 2013 WL

---

[11] Plaintiff did not seek to file a reply in support of the Motion, and therefore, Defendants' assertion that they produced a complete summary of cases Dr. Herold provided expert testimony in is uncontroverted.

443666, at * 6 (S.D. Ga. Feb. 5, 2013) (citations omitted). In considering whether a Rule 26(a)(2) violation is harmless, the court should consider: 1) the surprise to the party against whom the evidence would be offered; 2) the ability of that party to cure the surprise; 3) the extent to which allowing the evidence would disrupt the trial; and 4) the importance of the evidence. *Id.*

Regarding the first factor, there is no significant surprise to Plaintiff. The initial case summary clearly did not provide the cases in which Dr. Herold provided expert testimony at trial and/or deposition over the last four years. Doc. No. 183 at 23-30. At Dr. Herold's deposition, Defendants stated that they would provide an updated case summary, and Dr. Herold testified that he testified in about twelve to fifteen cases per year since 2014. Doc. No. 240-2 at 13. Thus, Plaintiff was made aware of Dr. Herold's work as an expert in cases within the last four years at his deposition. *Id.* As to the second factor, Defendants have since provided a complete summary of cases for Dr. Herold pursuant to Rule 26(a)(2)(B), and thus, any surprise was promptly cured.[12] Doc. No. 240 at 10.

As to the latter two factors, the Report's updated case summary is required under Rule 26, and thus, it is important. The updated case summary, however, would not disrupt trial. The trial term is postponed until further notice, and the updated case summary does not change any of the conclusions found in the Report.[13] Thus, Plaintiff's argument regarding the Report's deficient case summary is unavailing.

## IV.   CONCLUSION

Accordingly, it is **RECOMMENDED** that the Motion (Doc. No. 183) be **DENIED**.[14]

---

[12] As noted above, the undersigned issued an ore tenus order directing Defendants to produce all of Dr. Herold's reports and transcripts of trial and deposition testimony in the two cases in which Dr. Herold testified what constitutes the practice of medicine. *See supra* p. 5.

[13] United States District Judge Gregory A. Presnell has postponed the trial date until further notice. Doc. No. 260.

[14] Though it is recommended that the Motion be denied, Plaintiff is free to challenge Dr. Herold's findings through

## NOTICE TO PARTIES

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions. A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. 11th Cir. R. 3-1.

Recommended in Orlando, Florida on May 31, 2018.

GREGORY J. KELLY
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:
Presiding District Judge
Counsel of Record
Unrepresented Party
Courtroom Deputy

---

cross-examination and contrary evidence. *See supra* p. 8.